UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA                    CASE NO.  3:00CR263(JCH)

    v.

TODD SUMMERVILLE                    :          May 19, 2006

**GOVERNMENT'S MEMORANDUM IN AID**
**OF POST-*CROSBY* PROCEEDINGS ON REMAND**

    The Government respectfully submits this memorandum in response to the Court's order

of March 1, 2006, inviting written submissions from the parties on whether the Court would have

imposed a non-trivially different sentence if the Sentencing Guidelines had been advisory, and

otherwise in aid of proceedings on remand from the United States Court of Appeals for the

Second Circuit.

**I.**    **Procedural History**

    On October 26, 2001, the defendant pleaded guilty to possession with intent to distribute

five grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), & 2.

The defendant's guilty plea exposed him to a statutory minimum five-year term of imprisonment.

In connection with his guilty plea, the defendant stipulated as follows:

> The Government and the defendant stipulate and agree that the defendant is a
> Career Offender pursuant to U.S.S.G. § 4B1.1 and that the corresponding base
> offense level is 34.  The parties further stipulate and agree that, assuming a three-
> level reduction for acceptance of responsibility, the defendant's total offense level
> is 31 and that the corresponding guidelines range is 188 to 235 months
> imprisonment.  The defendant reserves the right to argue for a downward
> departure.

    At the sentencing hearing on February 15, 2002, the defendant did in fact argue for a

downward departure.  The Court recognized its authority to exercise its discretion to depart

downwardly from the career offender guidelines, but declined to exercise that discretion.

Sentencing Transcript 62-64 ("Tr. __."). Applying the career offender provisions of the

Sentencing Guidelines, the Court determined that the defendant's total offense level was 31, with

a criminal history category VI, resulting in a sentencing range of 188 to 235 months. Tr. 65.

The Court proceeded to sentence the defendant to a period of incarceration of 188 months, to be

followed by a five-year term of supervised release. Tr. 65. The defendant filed a notice of

appeal on February 21, 2002.

On August 2, 2005, the United States Court of Appeals for the Second Circuit ordered a

limited remand in this case, in light of the Supreme Court's decision in *United States v. Booker*,

125 S. Ct. 738 (2005), and the Court of Appeals' decision in *United States v. Crosby*, 397 F.3d

103 (2d Cir. 2005). This Court then issued an order inviting simultaneous briefing from the

parties on the question whether it would have imposed a non-trivially different sentence in the

case if the Sentencing Guidelines had been advisory. This is the Government's submission in

that regard.

## II.    The Purpose of a *Crosby* Remand

In *Booker*, the Supreme Court held that the United States Sentencing Guidelines, as

written, violate the Sixth Amendment principles articulated in *Blakely v. Washington*, 542 U.S.

296 (2004). As a remedy, the Court severed and excised the statutory provision that made the

Guidelines mandatory, 18 U.S.C. §3553(b)(1), thus declaring the Guidelines "effectively

advisory." *Booker*, 125 S. Ct. at 757. This ruling results in a system in which the sentencing

court, while required to consider the Guidelines, may impose a sentence within the statutory

maximum penalty for the offense of conviction. The sentence will be subject to appellate review

for "reasonableness." *Id.* at 765-66.

In *Crosby*, the Court of Appeals determined that it would remand most pending appeals

involving challenges to sentences imposed prior to *Booker* "not for the purpose of a required

resentencing, but only for the more limited purpose of permitting the sentencing judge to

determine *whether* to resentence, now fully informed of the new sentencing regime, and if so, to

resentence." *Crosby*, 397 F.3d at 117. In this respect, the Court of Appeals explained that a

remand would be necessary to learn "whether a sentencing judge would have imposed a

materially different sentence, *under the circumstances existing at the time of the original*

*sentence*, if the judge had discharged his or her obligations under the post-*Booker/Fanfan* regime

and counsel had availed themselves of their new opportunities to present relevant

considerations." *Id.* (emphasis added). Arguments addressing factual matters that have arisen

since sentencing are immaterial to the question presented, as the Court must determine whether

to re-sentence based solely on "the circumstances existing at the time of the original sentence."

*Id.*

**III.    <u>There is No Compelling Reason to Re-Sentence in this Case Because the Court
Carefully Considered All of the Relevant Sentencing Considerations at the Time of
Sentencing.</u>**

Sentencing in the post-*Booker* regime, as explained in *Crosby*, now involves two analytic

stages: first, a determination of the applicable guideline range (including any departures); and

second, a determination of whether in light of the Guidelines and the other factors listed in 18

U.S.C. §3553(a), there is any reason to impose a non-Guidelines sentence. *Crosby*, 397 F.3d at

113. Here, the record reflects that the Guidelines were properly calculated under the career

offender provisions, as stipulated by the parties, that the Court correctly declined to exercise its discretion to depart downwardly from the applicable guidelines, and that the Court considered all the relevant statutory factors in reaching its decision to impose a sentence of 188 months' imprisonment.

### Discussion

The defendant's Guidelines were calculated in paragraphs 34-48 of the Presentence Investigation Report ("PSR"), as follows:

### Offense Level Computation

| | |
|---|---|
| Base Offense level:  Drug Quantity (35-50 grams cocaine base)[1] U.S.S.G. §2D1.1(c)(6) | 30 |
| Specific Offense Characteristic: None | 0 |
| Adjustment for Role in the Offense: None | 0 |
| Victim Related Adjustment: None | 0 |
| Adjustment for Obstruction of Justice: None | 0 |
| Adjusted Offense Level (Subtotal): | 0 |
| Chapter 4 Adjustments: U.S.S.G. § 4B1.1 | 34 |
| Adjustment for Acceptance of Responsibility: | -3 |
| Total Offense Level: | 31 |

PSR ¶¶ 34-43.

---

[1] At sentencing, the Government noted that it was prepared to offer evidence that the quantity attributable to the defendant was greater than 50 grams, but the exact quantity did not need to be determined because the amount the Government was prepared to prove was not enough to increase the offense level above that which the parties stipulated was applicable under the career offender provisions.  Tr. 14-22.

With respect to the applicable criminal history category, the PSR attributed 11 criminal history points to the defendant based on his prior convictions, which would have placed him in criminal history category V, but because he was a career offender under the Guidelines, he was automatically placed in criminal history category VI. PSR ¶ 48. *See* U.S.S.G. §4B1.1.

**Defendant's Prior Criminal Record**

On April 12, 1991, the defendant was convicted in New Jersey of third degree theft in connection with the robbery of a taxi driver. PSR ¶ 44. According to the PSR, the defendant grabbed the taxi driver in a choke hold, told him "this is a stick-up," and applied additional pressure until the driver handed over his daily receipts, estimated at $140. *Id.* The PSR reflects that the defendant received a sentence of five years of probation for this offense. *Id.*

On April 26, 1996, according to the PSR, the defendant was convicted of Assault, Third, and Failure to Appear, Second, in Connecticut Superior Court for an incident on May 9, 1995 where he struck his pregnant girlfriend in the face. PSR ¶ 45. He thereafter was issued a summons and failed to appear, leading to his arrest. *Id.* The defendant received a 60-day sentence on each of these two counts. *Id.*

The PSR also details the defendant's two felony convictions for sale of narcotics – which formed the basis for the determination that he was a career offender under the Guidelines. PSR ¶ 46. The first conviction was entered on August 30, 1995 and stemmed from his arrest on June 6, 1995. A transcript of the proceeding in Connecticut Superior Court, which was attached to the defendant's sentencing memorandum, refers to the fact that the police recovered a plastic bag

containing 150 vials of a white powdery substance which tested positive for cocaine.[2] For this, the defendant received a sentence on August 30, 1995 of three years in jail suspended, and three years of probation. PSR ¶ 46.

Just over a month later, on October 4, 1995, the defendant was arrested again in the same area of Bridgeport for once again selling crack. PSR ¶ 46. This time, the police recovered the defendant's stash of 29 vials of crack, and seized four other vials that he had thrown to the ground. *Id.* The defendant pled guilty on May 2, 1996 and received an eight-year prison sentence, with four years to serve followed by three years of probation. *Id.* The defendant was released from his sentence on October 8, 1999, according to the PSR. *Id.* The defendant spent from October 1995 to February 1999 in prison on this conviction and then was in a half-way house from February 1999 through his release.

On December 3, 1999, approximately two months after his release from serving almost three and one-half years in prison and more than six months in a half-way house on his second sale of narcotics conviction, the defendant was arrested and charged with possession of narcotics after police found a bag in his pocket containing six smaller bags of crack cocaine. PSR ¶ 47. The defendant was found guilty of this charge on April 28, 2000, and sentenced to five years, suspended, and three years probation. *Id.*

---

[2] The portions of transcripts of the defendant's proceedings in Connecticut Superior Court on August 30, 1995 and May 2, 1996 that were attached to the defendant's sentencing memorandum, along with the Bridgeport Police Department incident report of October 4, 1995 that also was attached to the defendant's sentencing memorandum, are attached hereto at Exhibit A.

**The Offense of Conviction and Sentencing**

By February 2000, the defendant was involved in the sales of crack cocaine that formed the basis of the instant federal case. PSR ¶ 25-27. At that time, he was on pretrial release in connection with his December 3, 1999 arrest for felony narcotics possession and on probation for his narcotics sales conviction. PSR ¶¶ 47-48.

The PSR noted that the defendant participated in substantial crack sales on a number of occasions to an undercover agent ("the UC"). PSR ¶¶ 25-28. For instance, on February 22, 2000, the UC contacted the co-defendant Terrence Boyd, who was the UC's point of contact, and arranged to purchase $500 worth of crack. On February 23, 2000, the UC went to the meeting place where Boyd eventually arrived in a vehicle being driven by the defendant. After the UC got in the car, Summerville went to the trunk to retrieve a plastic baggie. He handed it to Boyd, who pulled out a second baggie filled with what appeared to be crack cocaine, counted out thirty rocks of crack and placed them in the plastic baggie Summerville had retrieved. Boyd and the UC then exchanged the thirty rocks of crack for $500, as agreed.[3] PSR ¶ 25. The quantity of drugs sold was 5.8 grams of crack.[4] PSR ¶ 25; Tr. 21.

Boyd and Summerville engaged in another sale of crack to the UC on February 29, 2000. PSR ¶ 26. On this occasion, they sold UC 6.8 grams of crack. *Id.* Yet another transaction took place on March 9, 2000. PSR ¶ 27. This time, Boyd counted out 43 individual baggies of crack

---

[3] This transaction is described in the PSR and detailed further in the corresponding DEA report attached to the defendant's sentencing memorandum.

[4] Paragraph 25 of the PSR listed the quantity as 4.3 grams. PSR ¶ 25. But, as the Court recognized at sentencing, that was the amount of the pure drug, whereas the net weight of the mixture was 5.8 grams. Tr. 10-11. The Court corrected the PSR at sentencing. Tr. 21.

and gave them to the UC, while Summerville went into a house and retrieved another bag of

crack for sale. *Id.* The total quantity sold to the UC on this occasion was 20 grams of crack. *Id.*

Summerville was arrested on December 18, 2000. He obviously had not stopped dealing

crack between the date of the last sale to the UC in March 2000 and the date of his arrest, given

that, when he was arrested on the instant charges, law enforcement found 60 small knotted bags

containing a total of approximately 6 grams of crack cocaine in a leather jacket belonging to the

defendant, $1,446 in cash in his pants, and drug packaging material. PSR ¶ 28.

**The Defendant's Sentence of 188 Months Was Reasonable and the Record Reflects that the Court Would Not Have Imposed a Materially Different Sentence if the Guidelines Had Been Advisory.**

The defendant stipulated in the plea agreement to being a career offender subject to a

guideline range of 188 to 235 months in prison. Nevertheless, at sentencing, he sought a

downward departure arguing that the applicable guideline range over-represented the

seriousness of the his criminal history. Specifically, he argued that his prior convictions

involved "street level drug dealing," Defendant's Sentencing Memorandum, dated February 14,

2002 ("Def. Mem.") at 4; and that those two convictions were really part of a single pattern of

conduct. *See, e.g.*, Tr. 30-39. He also argued that a departure was warranted because he had only

served one prior sentence, serving about three years and four months in prison, followed by

about eight months in a half-way house, and that such a sentence was out of proportion to the

sentence he faced under the career offender provisions of the Guidelines. *See* Def. Mem. at 7-8;

Tr. 39-45. The defendant also suggested that the Court should impose a sentence below the

bottom of the guideline range – 188 months – because he was less culpable than co-defendant

Boyd, who had received a sentence of 188 months. Tr. 45-50.

The Court expressed significant skepticism when presented with the defendant's arguments. For instance, when counsel suggested that a sentence within the career offender range would be excessive because the defendant's prior sentences were substantially less than that and so a lesser sentence would achieve the desired deterrent effect, the Court, referring to the speed with which the defendant returned to criminal activity after his release from prison, responded with a rhetorical question: "One three-and-a-half year sentence isn't enough to have a deterrent effect of more than 36 days?" Tr. 40. The Court went on to make clear that its point was that, unlike a career offender who may have received very short sentences previously, this defendant had served substantial time in prison and it obviously did not have much, if any, deterrent effect.[5] Tr. 40-41.

The Court ultimately rejected all of the defendant's arguments and agreed with the proposition that there was a need for a lengthy sentence in light of the defendant's demonstrated recidivism. It took note of his prompt return to dealing drugs upon his release from custody. In denying the defendant's request for a downward departure, the Court rejected the argument that the two prior drug convictions – which involved intervening arrests – occurred in close temporal proximity to one another and therefore to count them as two convictions overstated their seriousness. Tr. 60-61. Addressing the defendant's two felony drug convictions that occurred in rapid succession, the Court stated:

---

[5] The Court clarified that it had underestimated when it referred to 36 days, but it noted that the intervening period was, in fact, brief. Tr. 41. The PSR confirms this. The defendant was released from his sentence on the sale of narcotics conviction on October 8, 1999 (after having been in a halfway house), and then was arrested on December 3, 1999 for possession of narcotics. PSR ¶¶ 46-47. Moreover, as noted, the defendant was involved in the instant offense conduct as early as February 2000. PSR ¶¶ 25-27.

[H]e was arrested.  And because it was his first trafficking offense, I suppose, the state court determined to release him but he nonetheless appeared before, as I said, a judicial officer, entered a plea, eventually a conviction was entered and he was sentenced and placed upon probation, which included a promise not to commit further crimes and despite that, in a very short period of time, apparently undeterred by that experience, he continued to deal drugs and was again arrested.

And again he appeared and went through that whole process and was then assessed a sentence of four years in jail which is, in my view, *a very significant sentence*, it's a lot of time, particularly for a first – I don't think it's his first time he spent any time in jail but any sentence of significance.

But we know that *within a very short time of getting released on that sentence, he returned to selling drugs again* and so in the space of approximately four-and-three-quarter years, the defendant accumulated ten criminal history points which place him in category V and four of those four-and-three-quarter years were spent in jail and I don't think that my assessment of what will deter this defendant has to take into consideration that, gee, the deterrent events or the events that should have but failed to deter this defendant can't be counted because they occurred in the first two instances in rapid proximity to each other.

Tr. 60-61 (emphasis added).

The Court went on to note that, in addition to the defendant's predicate drug convictions, he also had other convictions, including the robbery of the taxi driver and an assault on his pregnant girlfriend.  Tr. 61.  The Court also took into consideration the amount of drugs involved in the predicate convictions, it added that "while I have the discretion to depart if I conclude that the amount of drugs in the prior offenses and the role were such as to justify the exercise of my discretion, I think the government is correct that I don't have to depart merely because the two prior drug convictions, the predicate convictions, involved 15 grams and 2.9 grams approximately."  Tr. 62.

The Court then formally denied the motion for a downward departure, stating that, although it recognized it had discretion to depart either horizontally or vertically or both from the guideline range, "the Court's going to decline to exercise its discretion to do so because I do not

find circumstances present in the defendant's situation that would support the exercise of my discretion or which would cause me to exercise my discretion.  Tr. 62.

The Court also rejected the defendant's argument that he should receive a departure because he supposedly was less culpable than his co-defendant Terrence Boyd, who also was a career offender with an applicable range of 188 to 235 months and who received a 188 month sentence.  The Court noted that the Guidelines are not designed "to effect perfect relative punishment among and between defendants, and that while, of course, I understand that my responsibility is to impose a fair and just sentence, I also have to do so within the guidelines." Tr. 63.  Significantly, the Court added that it would be concerned if two defendants with widely diverging degrees of culpability were subject to identical sentences or if the less culpable person actually was subject to a greater sentence.  Tr. 63.  But it swiftly concluded that this was not such a case, stating:

> [T]he Court is not persuaded that I'm presented with anything like that case. Maybe Mr. Summerville on that day got out of the car and got the bag out of the trunk but he clearly was in business, I guess is my view of the evidence, with Mr. Boyd certainly to a level that even if they're not exactly equal, the disparity in their role even as suggested by defendant's counsel would not be sufficient in my mind to justify a departure on some kind of basis that that argument was addressed to.
>
> I further note that in this case, it could just be bad luck or happenstance but nonetheless, the quantity that has absolutely been established by the presentence report findings, this defendant would have a larger quantity in these transactions than Mr. Boyd. . . .

Tr. 63. Indeed, the Government had pointed out in its argument that it was the defendant who had 60 knotted bags of crack cocaine in his possession when he was arrested on federal charges. Tr. 52.

The Second Circuit recently recognized that while the language of 18 U.S.C. § 3553(a)(6) appears to allow judges to consider disparities in sentences of between co-defendants in the same case, it is an open question in the Second Circuit whether such a disparity would support imposition of a non-Guidelines sentence. *United States v. Fernandez*, 443 F.3d 19, 32 n.9 (2d Cir. 2006). The *Fernandez* court noted there is authority for the proposition that 18 U.S.C. § 3553(a)(6) was intended to address *nationwide* disparities in sentencing, not disparities between or among co-defendants. *Id.* The Second Circuit cited cases on both sides of the issue. *Id.* It did not decide the issue, though, because the co-defendants were not similarly situated, so the defendant's argument that she should have received a lesser sentence in line with her co-defendant's did not implicate § 3553(a)(6). *Id.* The *Fernandez* court also held that, even if a disparity between co-defendants were an appropriate argument for leniency, it would not require a lesser sentence, as § 3553(a)(6) is just one of a number of factors a sentencing court must consider in reaching the appropriate punishment. *Id.* at 30-31.

Here, as the Court recognized, there was no significant difference in the relative culpability of defendants Summerville and Boyd. Tr. 63-64. So it is perfectly consistent with §3553(a)(6) that they both received the same sentence – 188 months. Moreover, even if there were some disparity, the other § 3553(a) factors the Court touched on during the sentencing – most prominently, the need for deterrence – fully support the sentence imposed here. It is worth noting that, on May 3, 2006, this Court ruled on defendant Terrence Boyd's *Crosby*

remand and determined that it would not have imposed a different sentence had the Guidelines been advisory at the time of sentencing. The Court therefore refused to resentence defendant Boyd. *See* Case Number 3:00CR263(JCH), Docket Number 1793. The Government believes that the Court should reach the same conclusion here.

In the end, the Court denied defendant Summerville's motion for a downward departure, highlighting the nature of the defendant's past criminal convictions, the length of the sentences imposed and the timing of his prior criminal conduct and four-year sentence vis-a-vis the timing of the commission of the instant offense. Tr. 64. The Court sentenced the defendant to 188 months, noting that it was at the bottom of the applicable range, and that it "was sufficient to satisfy all of the objectives of sentencing which are set forth in the statute and that no higher sentence was necessary to achieve any of those objectives . . . ." Tr. 71.

There is nothing in the record to suggest that the Court's careful balancing of all the factors in 18 U.S.C. § 3553(a) should result in some materially different sentence now that the Guidelines are merely advisory. Indeed, the record makes clear that the sentence at the bottom of the guideline range was the correct sentence here given the defendant's significant criminal history and the fact that prior sentences had failed to curb his criminal activities.

The Court clearly believed that the career offender range was appropriate here, and that it should be applied. Had it thought otherwise, it likely would have exercised its discretion to depart downward – discretion it clearly appreciated it had. But the Court chose not to exercise that discretion, presumably because it believed the guideline range reflected the appropriate balance. That same range is the advisory range applicable even post-*Booker*, and giving it due

consideration, as *Booker* requires, the Court should conclude that the sentence it previously imposed was the correct one, and that it would not have imposed a materially different sentence.

### Conclusion

For the foregoing reasons, in conformity with the procedures outlined in *Crosby*, this Court should indicate for the record, after consideration of the defendant's sentencing range under the Guidelines and all of the factors listed in 18 U.S.C. § 3553(a), that the defendant should not be re-sentenced.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

/s/

PAUL A. MURPHY
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. CT26654
UNITED STATES ATTORNEY'S OFFICE
915 LAFAYETTE BOULEVARD
BRIDGEPORT, CT 06604
(203) 696-3000
(203) 579-5575 (fax)

14

## CERTIFICATE OF SERVICE

This is to certify that I caused a copy of the foregoing to be sent to the following by first-class mail on May 19, 2006:

William M. Bloss, Esq.
Koskoff Koskoff & Bieder
P.O. Box 1661
Bridgeport, CT 06601

This is also to certify that a courtesy copy of the foregoing was hand-delivered on May 19, 2006 to:

The Hon. Janet C. Hall
United States District Judge
United States Courthouse
915 Lafayette Boulevard
Bridgeport, Connecticut 06604

U.S. Probation Office
915 Lafayette Boulevard
Bridgeport, Connecticut 06604

/S/
_____
PAUL A. MURPHY
ASSISTANT UNITED STATES ATTORNEY