UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____
                                            :
**UNITED STATES OF AMERICA**                :
                                            :  **CRIM. NO. 3:00CR263 (JCH)**
**VS.**                                     :
                                            :
**TODD SUMMERVILLE**                        :  **MAY 23, 2006**
_____ :

**DEFENDANT'S MEMORANDUM
IN SUPPORT OF REQUEST FOR RESENTENCING**

This Court sentenced Todd Summerville to a term of incarceration of 188 months, followed by five years of supervised release, upon his conviction for possession with intent to distribute cocaine base, 18 U.S.C. § 841(a)(1) and 841(b)(1)(B). While the direct appeal was pending, the United States Court of Appeals for the Second Circuit remanded the case to this Court for further proceedings under the principles of United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). Under Crosby, the Court must determine whether it would have imposed "a materially different sentence, under the circumstances existing at the time of the original sentence, if [it] had discharged [its] obligations under the Post-Booker/Fanfan regime, and counsel had availed themselves of their new opportunities to present relevant considerations." Id. at 117. This Court has described its role in this process as follows:

> Thus, if this court would have imposed essentially the same sentence, even while treating the Sentencing Guidelines as advisory under U.S. v. Booker, 125 S. Ct 738 (2005), and after considering all the factors listed in 18 U.S.C. § 3553(a), then the Sixth Amendment error inherent in the prior use of mandatory Sentencing Guidelines would be harmless. However, if this court determines that, treating the Guidelines as advisory and considering all of the factors under § 3553(a), it would have imposed a non-trivially different sentence than originally imposed, then the court must schedule a full re-sentencing under Rule 32 of the Federal Rules of Criminal Procedure.

United States v. Boyd, No. 3:00CR263 (JCH), at 1 (D. Conn. May 3, 2006). This analysis is to be conducted on the basis of information that was available at the time of the original sentencing. United States v. Ganim, No. 3:01CR263 (JBA), at 5-6 (D. Conn. May 5, 2006).

### A. Sentencing Proceeding

The Court sentenced defendant upon its finding that he was involved in distributing over five but less than 500 grams of crack cocaine. (Tr. of Sentencing Hearing, Feb. 15, 2005, at 20-21).[1] The Court initially found a base offense level of 26. (Id. at 25). Then, due to application of the career offender guidelines, the Court increased the offense level to 34. (Id. at 26). After reducing his offense level by three for acceptance of responsibility, and again applying the career offender guidelines of § 4B1.1 to set his criminal history category as VI, the Court calculated defendant's guidelines range as 188-235 months. (Id. at 27).

Defendant moved for a downward departure under § 4A1.3, which acknowledges that "there might be cases where the court concludes that a defendant's criminal history category significantly overrepresents the seriousness of a defendant's criminal history, or the likelihood the defendant will commit further crimes." (Id. at 27-28; see also id. at 56). The heart of the defendant's argument that his two predicate acts for purposes of being a career offender took place in a short period of time – about four months in 1995. (Id. at 33). Further, the defense argued that the evidence suggested that in the earlier cases defendant was a "low-level dealer," a hand-to-hand dealer involved with small

---

[1] The Court accepted the PSR's revised calculation of 38 grams, although the Court further stated that because of the application of the career offender guidelines a more detailed determination of quantity was not necessary. (Id. at 25-26).

sales. (Id. at 37-39). His prior sentences on those cases were for probation and for eight years, although he served four. (Id. at 41-42). The government agreed that it appeared that defendant was a "street-level dealer," but argued that a departure was not appropriate. (Id. at 53).

The Court recognized that under United States v. Rivers, 50 F.3d 1126 (2d Cir. 1995), and United States v. Mishoe, 241 F.3d 21 (2d Cir. 2001), it had the discretion "to reduce not only the criminal history category on the horizontal level but also in a vertical sense with the offense level." (Id. at 57). However, the Court declined to depart "because I do not find circumstances present in the defendant's situation that would support the exercise of my discretion or which would cause me to exercise my discretion." (Id. at 62). In addressing an argument about the relatively culpability of Summerville and his co-defendant Boyd, the Court stated that "while, of course, I understand that my responsibility is to impose a fair and just sentence, I also have to do so within the guidelines." (Id. at 63). The Court stated that while Boyd's and Summerville's conduct may not have been "exactly equal, the disparity in their role even as suggested by defendant's counsel would not be sufficient in my mind to justify a departure on some kind of basis that that argument was addressed to." (Id. at 63). The Court denied the motion for downward departure (id. at 64), and sentenced defendant at the bottom of the guidelines range. (Id. at 65).

**B. Section 3553(a) requires individualized consideration and application of sentencing factors that may lead to a lower sentence although they would not suffice for a downward departure, including the unbalanced effect of the career offender and crack cocaine guidelines.**

The guidelines were binding and mandatory at the time the Court sentenced defendant. However, in light of United States v. Booker, 125 S. Ct. 738 (2005), and

United States v. Crosby, 397 F.2d 103 (2d Cir. 2005), it is now clear that the system under which the Court operated at the time violated defendant's sixth amendment rights. Now, the factors set forth in § 3553(a), including the guidelines, should each be considered by the Court. No one factor within § 3553(a) is elevated to presumptively controlling weight. The Guidelines are more than "a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge." Crosby, 397 F.3d at 113-14. However, they are not the controlling factor, more important than all – or any – of the other factors listed in § 3553(a). After considering the guidelines, the sentencing judge may impose either a guidelines sentence, including one taking into account departures, or a non-guidelines sentence. Id. at 113.

This case sets forth a clear reason to impose a non-Guidelines sentence: defendant was sentenced to 188 months – nearly sixteen years without parole – not because he was a manager or a high-level member of the conspiracy or because he used or even carried weapons. Rather, he received that sentence because he distributed enough crack for him to be exposed to a forty-year maximum, and because he twice previously was convicted of possessing with intent to distribute a controlled substance – albeit in even smaller amounts.

Section 3553(a) requires the court to impose a sentence "sufficient, but not greater than necessary," to promote the purposes of fair sentencing, namely to "reflect the seriousness of the offense, ...promote respect for the law, ...provide just punishment for the offense," and "afford adequate deterrence to criminal conduct." Under Booker, "[s]ection 3553(a) remains in effect, and sets forth numerous factors that guide sentencing." Booker, 125 S. Ct. at 766. Those factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments

>   issued under section 994(p) of title 28); and
>
>   (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

§ 3553(a).

The court in Crosby declined to define how a district judge is to "consider" the Guidelines.[2] Clearly, this Court at the time of sentencing concluded that the Guidelines were binding and imposed a life term in the absence of evidence sufficient to find a departure. However, nothing in either Crosby or Booker suggests that a Guidelines range, once it is found, is to be presumptively considered "reasonable" or, in essence, a default position. Although the court cautioned that judges should continue to "reduce unwarranted disparities," they should now be able to achieve "more individualized justice." Crosby, 397 F.3d at 113-14. "In short, there need be no 'fear of judging.'" Id. "Consideration of the § 3553(a) factors is not a cut-and-dried process of factfinding and calculation; instead, a district judge must contemplate the interplay among the many facts in the record and the statutory guideposts." United States v. Fernandez, 443 F.3d 19, 29 (2d Cir. 2006).

In short, because the guidelines are no longer mandatory, district courts must consider the policy choices made by the Sentencing Commission in arriving at the

---

[2] Some district courts have adopted this definition: "The term 'consider' requires the sentencing judge to be "aware of both the statutory requirements and the sentencing range or ranges that are arguably applicable," and be sure that "nothing in the record indicates misunderstanding about such materials or misperception about their relevance." United States v. Mann, 2005 U.S. Dist. LEXIS 2150, at *13 (S.D.N.Y. Feb. 14, 2005) (Baer, J.).

guidelines range for a particular case, but the judge is also free to disagree with those policy choices under the circumstances of the case, even if those circumstances are no longer "atypical" or "outside the heartland."  "The Guidelines . . . are the product of policy decisions by the Sentencing Commission . . . . If those policy decisions are no longer mandatory, the sentencing judge is free to disagree with them."  Booker, 125 S. Ct. at 790 n.3 (Scalia, J., dissenting).

The effect of this is that even where a downward departure would have been legally insufficient, the district court now is open to consider an appropriate sentence without the guidelines being mandatory.  District courts now should consider circumstances that the guidelines deem disfavored factors for downward departures.  See United States v. Antonakopoulos, 399 F.3d 68, 83 (1st Cir.2005); United States v. Haidley, 400 F.3d 642, 645 (8th Cir.2005); United States v. Spigner, 416 F.3d 708, 711-13, n. 1 (8th Cir.2005) (remanding for consideration of defendant's medical needs as required by § 3553(a), although that would not be basis for departure).  Precisely this point has been made in the context of the career offender guidelines: even in a case where a downward departure under § 4A1.3 was not appropriate, that did not foreclose a non-Guidelines sentence.  United States v. Andrews, 2006 WL 1217261, at *5 (10th Cir. May 8, 2006) (remanding for resentencing of career offender where district court had earlier ordered downward departure which court of appeals previously reversed as improper downward departure; issue could be revisited post-Booker by applying § 3553(a)).

The Eleventh Circuit recently considered an appeal where a judge issued a non-Guidelines sentence in a career offender case, where the defendant was convicted of selling $350 of crack.  United States v. Williams, 435 F.3d 1350 (11th Cir. 2006).  The

two prior felonies cited for this enhancement were (1) possession of cocaine with intent to sell, and (2) carrying a concealed firearm. The defendant's guidelines range was 188-235 months. Finding that the guidelines "do not produce a just and reasonable result," the district court sentenced defendant to 90 months. Id. at 1353. The court of appeals upheld the sentence as reasonable. Id. at 1355.

The Fourth Circuit also recently stated that it would find reasonable a twenty-year sentence where the guidelines range was thirty years to life due to the career offender statute. The court first noted:

> Application of the career offender guideline is "fraught with potential imprecision." United States v. Adkins, 937 F.2d 947, 952 (4th Cir.1991). The career offender guideline covers a broad range of offenders, encompassing the street-level dealer who handles only small quantities of drugs and the drug kingpin or the recidivist with a history of violence.

United States v. Moreland, 437 F.3d 424, 436 (4th Cir. 2006). The court noted that the circumstances present would not support a downward departure pre-Booker of any amount. Id. at 436 n.8. They would, however, support a non-Guidelines sentence of twenty years, one-third below the lower part of the Guidelines range (although not the ten year sentence imposed by the district court). Id. at 437.

Congress directed the U.S. Sentencing Commission to assure that certain "career" offenders receive a sentence of imprisonment "at or near the maximum term authorized." 28 U.S.C. § 994(h). Section 4B1.1of the U.S. Sentencing Guidelines implemented that directive. Insofar as it is relevant to this case, under § 4B1.1 a person convicted of a charge with a maximum sentence of forty years must be sentenced with an offense level of 34 and in criminal history category VI, regardless where application of the guidelines would otherwise place him. In this case, in the absence of the career offender statute and

guideline, defendant's sentencing guidelines range would have been 120-150 months (if the defendant's position as to quantity had been accepted).

The sentence and guidelines calculations were driven by the way that 21 U.S.C. § 841(b) and the guidelines treat crack more harshly than powder cocaine. Under § 841(b)(1)(B), a person is exposed to a forty year maximum sentence for as little as five grams of cocaine base, but 100 times that amount for powder cocaine is required for the same sentence. A person convicted of distributing between five and 500 grams of powder cocaine would be exposed to a maximum sentence of only twenty years. Accordingly, without the disparity between powder and crack cocaine under the statute, under § 4B1.1 defendant's guideline range would have been 151-188 months (level 29 rather than level 31, criminal history category VI).

This ratio is, of course, carried over to the sentencing guidelines. Several courts have considered the disparity between crack and powder cocaine, and the Sentencing Commission's stalled efforts to reduce the disparity, in sentencing defendants charged with distributing cocaine base to sentences below what would be the guidelines range. Simon v. United States, 361 F. Supp. 2d 35, 43 & n.10 (E.D.N.Y. 2005) (Sifton, J.) ("Since Booker, a number of courts have accepted the argument that in cases involving crack, they should consider non-Guidelines sentences."); United States v. Smith, 359 F. Supp. 2d 771, 780-81 (E.D. Wis. 2005) (granting below Guidelines sentence to defendant convicted of crack offense); United States v. Carvajal, 2005 U.S. Dist. LEXIS 3076, 2005 WL 476125 (S.D.N.Y. Feb. 22, 2005) (same);[3] cf. United States v. Nellum, 2005 U.S.

---

[3] Assuming that PACER computer records have been updated, it appears that the government did not appeal the decisions in Simon and Carvajal.

Dist. LEXIS 1568, 2005 WL 300073, at *3 (N.D. Ind. Feb. 3, 2005) (imposing non-guidelines sentence but not addressing 100:1 crack ratio issue); see also U.S. Sentencing Commission, Special Post-Booker Sentencing Coding Project (May 26, 2005) (available at http://www.ussc.gov/Blakely/PostBooker_5_26.pdf) (10.4% of post-Booker sentences in drug cases are non-Guideline sentences below Guideline range).

Judge Sifton's opinion in Simon offers a persuasive analysis of why the crack guidelines and their treatment within § 841(b), with their 100:1 ratio as they compare to powder cocaine, are based on flawed assumptions and are unfair – and unrelated to the rational sentencing structure set forth in § 3553(a). The same observations should apply to the statutory distinctions. In short, as stated in Smith, "none of the previously offered reasons for the 100:1 ratio withstand scrutiny." Smith, 359 F. Supp. 2d at 780.[4] See also Spade, Beyond the 100:1 Ratio: Towards a Rational Cocaine Sentencing Policy, 38 Ariz. L. Rev. 1233, 1249 (1996); U.S. Sentencing Commission, Special Report to the Congress: Cocaine and Federal Sentencing Policy 10 (2002), available at http://www.ussc.gov/legist.htm. In any event, the Court in fashioning a fair sentence should consider that the guidelines range, as calculated in the PSR, overstates the seriousness of the offense and the need for a 188-month sentence.

With these standards and background in mind, the factors in § 3553(a) that suggest that the Court would have imposed a different sentence had the guidelines not been mandatory are as follows.

---

[4] In the event of a factual dispute about the seriousness of a crack offense as opposed to a powder cocaine offense, defendant requests an evidentiary hearing where he could present evidence from scientific experts.

1. **The nature and circumstances of the offense and the history and characteristics of the defendant.**

Perhaps the strongest reason for a non-Guidelines sentence is Summerville's status as a low-level dealer of crack cocaine, for the reasons discussed above. While that certainly does not excuse his conduct, it does make a sixteen-year sentence harsher than necessary to further the § 3553(a) factors. For example, there is no claim of use of weapons by Summerville (PSR ¶¶ 10-15), while an "enforcer" for the Birdens' operation received a fifteen year sentence for violation of the Armed Career Criminal Act. (PSR ¶ 10).

His family situation also bears on his sentence. "A defendant's family circumstances are part of [his] history and characteristics," United States v. White, 301 F. Supp. 2d 289, 294 (S.D.N.Y. 2004), and thus must be considered. He supported his children and maintained contact with them through the time of his arrest. (PSR ¶ 52). Further, his difficulties with drug use and, eventually, the law started when his father died tragically when Summerville was in ninth grade and he was not able to continue in parochial school. (PSR ¶ 50).

2. **The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

Certain of the subsection (2) factors do not weigh at all in this case. Specifically, a sentence in this case is unlikely to provide defendant with needed educational or vocational training, medical care, or other correctional treatment.

As to whether there is a need to "protect the public from further crimes of the defendant," upon release from most any reasonable sentence, he will be significantly older than he is today. See United States v. Carmona-Rodriguez, 2005 U.S. Dist. LEXIS 6254, at *10-11 (S.D.N.Y. Apr. 11, 2005) (Sweet, J.).  Age upon release is a strong predictor of future criminal activity.  See Simon, 361 F. Supp. 2d at 43; United States v. Nellum, 2005 U.S. Dist. LEXIS 1568, 2005 WL 300073, at *3 (N.D. Ind. Feb. 3, 2005); see also United States Sentencing Commission, Measuring Recidivism: The Criminal History Computation Of The Federal Sentencing Guidelines at 28 (2004) (available at http://www.ussc.gov/publicat/Recidivism_General.pdf).

A second factor which the Court must consider under this subsection is that of rehabilitation.  Stated simply, a sentence of this length does not further the statutorily mandated purpose of sentencing, particularly when parole or other early release is not available.  As stated by Judge Hellerstein:

> Rehabilitation is also a goal of punishment. 18 U.S.C. § 3553(a)(2)(D). That goal cannot be served if a defendant can look forward to nothing beyond imprisonment.  Hope is the necessary condition of mankind, for we are all created in the image of God.  A judge should be hesitant before sentencing so severely that he destroys all hope and takes away all possibility of useful life. Punishment should not be more severe than that necessary to satisfy the goals of punishment.

Carvajal, 2005 U.S. Dist. LEXIS 3076, at *15-16.

The consideration of general deterrence, required under § 3553(a)(2)(B), mandates that the Court consider the extent to which similarly situated potential offenders will be deterred from committing similar crimes by whatever sentence the Court imposes in this particular case.  This is, however, a highly unpredictable exercise: it assumes that a person in defendant's position considering whether to commit a crime weighs the consequences of getting caught and further weighs the benefits against the incremental

risks of prison sentences of particular terms. However, most persons would not commit the crime at all if they thought that they would be caught, regardless of the punishment. Further, it is impossible to conclude that somewhere along the range of "just" punishments, there is a tipping point, a point beyond which a rational potential offender will conclude not to become involved in that offense due to the sentence for this offense. In any event, the Court can readily conclude that any reasonable sentence imposed – whether ten or twelve or fourteen years – will not serve materially different purposes as it relates to general deterrence.

### 3.  The kinds of sentences available.

The court may sentence defendant to a term of at least five years and up to forty years.

### 4.  Sentencing guidelines range.

The guidelines range was properly calculated in the PSR at 188-235 months. However, under the circumstances of this case, the range should not be entitled to significant weight. Most importantly, they should not be considered to be the "starting point" for considering the other § 3553(a) factors.

In United States v. Ranum, 353 F. Supp. 2d 984, 986 (E.D. Wis. 2005), Judge Adelman concluded that the guidelines are not presumptive, but are truly advisory, and should be treated as one factor to be considered in conjunction with other factors that Congress enumerated in § 3553(a). Judge Pratt followed Ranum in United States v. Myers, 353 F. Supp. 2d 1026, 1029-30 (S.D. Iowa 2005):

> At first blush, a system of discretionary sentencing would appear to invite what Congress hoped to avoid, unfairness at sentencing. The Supreme Court in Booker, however, reminded judges and the public that true uniformity exists not in a one-size-fits-all scheme, but in "similar relationships between sentence and real

> conduct." 125 S. Ct. 738, at 21.  This is the guiding principle at work in Booker. This Court will endeavor, then, to square the real conduct presented by the evidence presented concerning a particular defendant, with the public interests expressed through the sentencing statute, in order to deliver a judgment in a manner as even-handed and reasonable as humanly possible.

Id. See also United States v. West, 2005 U.S. Dist. LEXIS 1123, at *6-*7 (S.D.N.Y. Jan. 27, 2005) (Sweet, J.) ("The Guidelines calculations are to be treated 'as just one of a number of sentencing factors'" in part because several of the factors identified in § 3553(a) conflict with prescriptions and proscriptions of Guidelines, and that such conflicts will require resolution by district courts); United States v. Jones, 352 F. Supp. 2d 22, 26 (D. Me. 2005) (reviewing factors identified in § 3553(a) "in determining whether to apply the now advisory Guidelines" and concluding that Guidelines would not be followed under the circumstances); United States v. Jaber, 362 F. Supp. 2d 365 (D. Mass. 2005); United States v. Moreland, 2005 U.S. Dist. LEXIS 7393, at *3-*4 (S.D.W. Va. Apr. 27, 2005); Simon v. United States, 361 F. Supp. 2d 35, 40 (S.D.N.Y. 2005) (Sifton, J.) ("I adopt the view that the Guidelines are advisory and entitled to the same weight accorded to each other factor that the Court is instructed to consider by § 3553(a)," in part because § 3555(a) does not distinguish between the weight to be given to any of the factors listed," so that "giving 'heavy' weight to the Guidelines may therefore be in tension, if not conflict, with § 3553(a)'s command to consider a multitude of factors").[5]

---

[5] See also United States v. Jaber, 362 F. Supp. 2d 365, (D. Mass. 2005); United States v. Carvajal, 2005 U.S. Dist. LEXIS 3076, 2005 WL 476125, at *5-6 (S.D.N.Y. Feb. 22, 2005); United States v. Biheiri, 356 F. Supp. 2d 589, 594 n.6 (E.D. Va. 2005) ("No individual [§ 3553(a)] factor is singled out as having greater weight; instead, the richness of factual diversity in cases calls on sentencing judges to consider all of the factors and to accord each factor the weight it deserves under the circumstances. Thus, the Guidelines

As noted above, the unfairness of the crack guidelines and the false assumptions upon which they are based provide a powerful reason for a non-guidelines sentence. This is exacerbated in this case by the career offender guidelines. Some courts have considered arguments that a fairer application of the principles in § 3553(a) would require consideration of crack and powder cocaine at a 1:1 ratio. Even if the Court considered a ratio of 10:1 or 20:1 for the crack with which defendant was found responsible in the PSR, then defendant's adjusted guideline range would be 151-188 months.

     5. **Policy Statements.**

Defendant knows of no policy statements that the Court should consider relating to this case.

     6. **The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

This factor would seem difficult to apply in the abstract and separate from the other factors. If the Court is faithfully applying the § 3553(a) factors, then by definition sentence disparity has been reduced. However, it bears noting that Terrence Boyd received the identical 188 month sentence although he possessed a firearm and was apparently above Summerville in the hierarchy of the conspiracy, as argued at the time of the original sentencing.

     7. **Restitution.**

Restitution is not a factor.

---

sentencing range is not entitled to 'heavy weight,' but it is a useful starting point in fashioning a just and appropriate sentence."); United States v. Galvez-Barrios, 355 F. Supp. 2d 958 (E.D. Wis. 2005); United States v. Huerta-Rodriguez, 355 F. Supp. 2d 1019, 1025-28, 1029-30 (D. Neb. 2005).

**Conclusion**

The Court likely would have sentenced defendant to a materially different term of years, if it had that flexibility at the time of sentencing.  At this time, it should resentence defendant, and should resentence him to a term of years that is no more than necessary to further the principles set forth in § 3553(a).

                                                THE DEFENDANT

                                      By_____
                                        William M. Bloss, No. ct01008
                                        Koskoff Koskoff & Bieder, P.C.
                                        350 Fairfield Avenue
                                        Bridgeport, CT 06604
                                        TEL:  203-336-4421
                                        FAX:  203-368-3244
                                        email: bbloss@koskoff.com

**CERTIFICATION**

       This is to certify that a copy of the foregoing has been mailed, postage prepaid, on this 23rd day of May 2006, to all counsel and pro se parties of record, as follows:

Paul Murphy, Esquire
Assistant U.S. Attorney
915 Lafayette Blvd.
Bridgeport, CT 06604

                                                                           _____
                                                                               William M. Bloss